GUILLERMINA NAVEDO WIDOW OF GUERRERO, Plaintiff and Appellant, *v.* ISABEL AMATO DE BALASQUIDE, ETC., ET AL., Defendants and Appellees.

No. 9748. Argued February 8, 1949.—Decided December 13, 1949.

---

640

*Carlos D. Vázquez* for appellant.   *Juan Enrique Géigel* and *Guillermo Silva* for appellees.

Mr. Justice Negrón Fernández delivered the opinion of the Court.

In the District Court of San Juan, Guillermina Navedo widow of Guerrero sued Isabel Amato de Balasquide, assisted by her husband José Ramón Balasquide, the husband personally and José Jacinto López to recover the possession of the top floor of a house in Fernández Juncos Avenue in Santurce, alleging that on March 27, 1947 defendants forcibly took away from plaintiff the material possession of said top floor, changing the door locks and gaining access thereto surreptitiously and against plaintiff's will expressed through one of her children, depriving her since then of the possession of said top floor in the house referred to.   The codefendants, Isabel Amato de Balasquide and Jacinto López, answered the complaint specifically denying that plaintiff had been at any date or time in the material possession of the top floor of the house described in the complaint, and likewise denying that they had taken forcible possession of said top floor from the plaintiff.

After a trial on the merits, the lower court rendered judgment for defendants.   Plaintiff appealed and in her brief she charges the lower court with error in the weighing of the

evidence and in the application of the law in deciding that the plaintiff did not show that she was in the material and physical possession of the property object of the injunction.

■ The facts found proved by the lower court regarding which, as indicated by the parties in their respective briefs, there is no conflict, are the following, as they appear in the judgment appealed from:

"This case involves a married couple that acquires a two-story house on Fernández Juncos Avenue, in Santurce, Puerto Rico; originally, the wife collected the rentals of both floors; subsequently, the top-floor tenant, Juan Miranda, quarreled with defendant's wife and decided to pay the rent directly to the husband. The couple separated and the wife resorted to the district court to have her husband declared incapacitated on the ground that he was a habitual drunkard. The District Court of San Juan appointed the wife as tutor, but the husband appealed and the case is still pending on appeal.

"On March 25, 1947, Juan Miranda vacated the top floor of the house. Apparently nothing happened on that day, March 25, 1947.

"On March 26, 1947, between eight thirty and nine in the morning, the husband leased the house to the petitioner, through one of her sons named Octavio Guerrero. On that same date, March 26, 1947, petitioner's son gave him a check in payment for the first month and defendant's husband gave him the keys to the house. The house was to be occupied by the petitioner, by one of her sons called José Efraín Guerrero who was planning to marry Miss Emilia García, the three of them, petitioner, her son and his wife to reside in said top floor. That same day, March 26th, during the afternoon, petitioner's son, José Efraín Guerrero, did some errands in the city, such as requesting and making the corresponding deposit for gas service and obtaining the transfer of the electric light. After doing these errands in the city Mr. José Efraín Guerrero met his fiancée Miss Emilia García. They went to Mr. Octavio Guerrero's house to get the keys and then Mr. José Efraín Guerrero, his fiancée, Mis Emilia García, and Mr. Guerrero's sister-in-law went to see the rented house. Miss Emilia García, who testifies more in detail, says that they must have reached Stop 22, where the house is located, at about twenty minutes past five in the afternoon, that

they went then to the house of José Efraín Guerrero's brother to get the keys and then went to the top floor, where Mr. Guerrero, herself, and Mr. Guerrero's sister-in-law stayed for about an hour or an hour and a quarter; that they took there some brooms, brushes and a swab intending to clean the floor next day. That the only thing they did that afternoon was to pick up some magazines and newspapers which were scattered about the closets and rooms and put them all together in the last room. They locked the house with the same keys and departed. Therefore, during the day of March 26, 1947 petitioner's possible possession of said top floor lasted for an hour or an hour and a quarter.

"Next day, March 27, 1947, the defendant wife called on Mr. Guerrero at his house, accompanied by her nephew on her husband's side, José Jacinto López, and demanded from Mr. Guerrero the delivery of the keys that her husband, Mr. Balasquide, had left with him. Mr. Guerrero refused to give the keys to the defendant wife, Mrs. Isabel Amato de Balasquide. Mrs. Balasquide then went to the house, at approximately seven or seven and a half in the morning and changed the lock of the top floor. At about half-past nine or ten in the morning, Mr. José Efraín Guerrero, accompanied by a man who was going to do the cleaning, went to the top floor and when he tried to open it he found that the key did not fit the lock. He then broke into the top floor through a small window in the kitchen and found that somebody had already moved in some furniture which was wrapped in newspapers in the living room of the house. Meanwhile the truck with Mr. Guerrero's effects arrived, but seeing that the house was occupied by other furniture he decided to send his belongings back to his house."

The lower court considered the visit of plaintiff's son, his fiancée and his sister-in-law to the rented house, "rather as an inspection of the leased property than as an act of taking physical and bodily possession of the property" and it deemed that because of the nature of the action exercised, no *further possessory* act of the house having taken place, plaintiff never had such possession and the injunction did not lie. We do not agree. If the facts had merely shown the existence of the lease contract and the delivery of the keys by the lessor to

the lessee, there would be no doubt that due to the nature of the action and following the doctrine applicable to these cases,[1] injunction could not prosper. But in this case there was more than the mere symbolic delivery of the leased property. The visit of the plaintiff's son, coupled with the acts he performed therein, constitutes a sufficient act of possession so as to consider plaintiff the *possessor* for the purpose of invoking the protection of the law—§ 375 of the Civil Code, 1930 ed.—[2] by the exercise of the action of injunction to recover. Plaintiff, through her son, made use of the keys to enter the house; she enjoyed it for more than an hour performing an initial cleaning by picking up newspapers and magazines that were scattered in the closets and rooms, and putting them together in the last room, and placed in the house such objects as brooms, brushes and a swab, to be used later. When she came out, she locked the house with the same keys. All this happens immediately after plaintiff's son—who together with plaintiff was to live in the property— had taken the necessary steps for the installation of gas and electricity in the house.

Under such circumstances, no further act of possession was necessary, in our judgment, to make plaintiff a *possessor* entitled to exercise the writ of injunction. The lower court itself expressed in its opinion "a serious doubt as to whether or not the action would lie in a case like this," and regarded

---

[1] In proceedings of this nature only the fact of possession is considered, never the right to such possession, nor title to or ownership of the property object of the proceeding. *Martorell* v. *Municipality, ante,* p. 358; *Rivera* v. *Cancel,* 68 P.R.R. 339, 343; *Pérez* v. *Castro,* 52 P.R.R. 555, 558; *Solís* v. *Esquilín,* 48 P.R.R. 587; *Pérez* v. *Marrero,* 47 P.R.R. 431; *Rivera* v. *Vargas,* 43 P.R.R. 144; *Vicente* v. *Ortiz,* 38 P.R.R. 95; *Pérez* v. *Pérez,* 38 P.R.R. 676; *Vázquez* v. *Rivera,* 37 P.R.R. 748; *Oliver et al.,* v. *González et ux.,* 37 P.R.R. 868; *Solís* v. *Castro,* 36 P.R.R. 94; *González* v. *Rivera,* 31 P.R.R. 291.

[2] This Section provides: "Every possessor has a right to be respected in his possession; and if he be disturbed therein, he shall be protected or reinstated in such possession by the means established in the laws of procedure."

the visit of plaintiff's son to the leased property—which it finally considered as an inspection—as "the only possessory act of some importance."

Since the injunction to recover possession may be exercised by the possessor for disturbance and dispossession acts, even against the owner himself, IV Manresa, *Comentarios al Código Civil Español*, 5th ed., p. 194; *Revista General de Legislación y Jurisprudencia*, published by "Instituto Editorial Reus," Madrid, no. 6, June 1946, "*La Posesión de las Cosas Arrendadas*," by Rafael Gimeno Gamarra, p. 671 *et seq.*, VI Manresa, *Comentarios a la Ley de Enjuiciamiento Civil*, 3d ed., pp. 148–49, plaintiff is entitled to be restored to the possession of which she was deprived by defendants.

Judgment will be reversed and another rendered for plaintiff, with costs on defendants.